UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
LORRAINE WOOD,                                            56.1 Statement

     Plaintiff,               06 Civ. 5765 (CLB)
   - against -

THE STATE OF NEW YORK et. al.,

     Defendants.
-----------------------------------------------------X

   Pursuant to Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern & Eastern Districts of New York, defendants Dana Keller and the New York State Department of Correctional Services (collectively "defendants") by their attorney, ANDREW M. CUOMO, Attorney General of the State of New York, contend that there is no genuine issue to be tried as to the following material facts:

   1. On August 2, 2005, officer Lorraine Wood reported to Captain Niles that officer Michael Kannon had pictures of nude women in the prison and was showing them to other officers in the mess hall and claiming that they looked like her.  Officer Wood requested that officer Kannon be disciplined for his actions.  Niles Decl.¶ 5.

   2. Captain Niles immediately notified DOCS' Office of Labor Relations, DOCS' Office of Diversity Management and the Acting Superintendent Kevin Keller about the allegations.  Niles Decl.¶ 6.

   3. After being interviewed, Officer Kannon admitted bringing nude pictures into the workplace, showing them to staff and asking if they looked like officer Wood.  Officer Kannon destroyed the pictures that he claimed looked like officer Wood.  Niles Decl.¶ 6; see Exh. A

Incident Involving Inmate Carrington

      4.  On or about August 27, 2005, officers Wood and Grady informed Captain Niles that an inmate, Anthony Carrington, had told them that there was a picture in the inmate population of officer Wood posing nude and that inmates were talking about the incident involving officers Wood and Kannon. Niles Decl.¶ 8. Captain Niles immediately investigated the allegations interviewing inmate Carrington who told him that he had not seen any picture of officer Wood but was told that it was out in inmate population. Niles Decl.¶ 8. Captain Niles also interviewed a number of confidential inmate sources throughout the prison. None of these sources had seen any picture. Id. Officer Kannon was also interviewed and again confirmed that the pictures that he claimed looked like officer Wood were destroyed. Niles Decl.¶ 9. Captain Niles notified Captain Ferro of the Department of Labor Relations that there was no proof that a picture of or that resembled officer Wood was in the inmate population. Niles Decl. Exh. B.

      5.  Officer Kannon began working for DOCS in 1984. Prior to the August, 2005 incident, his disciplinary record included three counseling memos involving cursing over the radio, leaving a tool cabinet unsecured and failing to report an accident to a state vehicle in a timely fashion. Ferro Decl. Exh. C. From November, 1985 to November, 2004, he has received five yearly performance ratings of "good" and 16 performance ratings of "excellent." Lee Decl. Exh. C.

Disciplinary Proceedings Against Officer Kannon

      6.  On August 2, 2005, DOCS Office of Labor Relations was contacted regarding a potential violation of Department sexual harassment rules by officer Michael Kannon. Investigation of the charges revealed that officer Kannon admitted bringing nude photographs into

the prison, showing these photographs to other officers and asked whether two of the photos looked like officer Wood.  Ferro Decl. ¶¶ 5-6.

       7.    A Notice of Discipline dated September 8, 2005 was served on officer Kannon that sought his dismissal from service and loss of accrued annual leave.  Ferro Decl. Exh. A.  On December 2, 2005, Officer Kannon pleaded not guilty to the charges and expressed a willingness to settle the case if the settlement was reasonable.  Ferro Decl. ¶ 9.

       8.    The Office of Labor Relations discussed the disciplinary charges against officer Kannon with officer Wood and sought her input into whether the case should be settled or whether the Department should seek termination of officer Kannon's employment at an arbitration hearing.  Officer Wood decided to seek termination of officer Kannon's employment and this recommendation was followed by Captain Niles.  Ferro Decl. ¶¶ 10-13.

<u>The Arbitration Proceeding</u>

       9.    An arbitration hearing was held on March 24, 2006 before arbitrator Theodore B. Lang.  At the hearing, Officer Kannon admitted the charges against him that he brought contraband into the facility and displayed naked photos to other officers and asked if they looked like officer Wood.  Officer Kannon asked for leniency in light of his many years of service to the Department.  Ferro Decl. ¶¶ 14-15.

       10.    The arbitrator found that officer Kannon had violated the Department's sexual harassment policy but concluded that the proposed penalty (dismissal) was too severe in light of mitigating factors including (1) officer Kannon sought no sexual favors from officer Wood; (2) lack of evidence that officer Kannon intended to embarrass officer Wood; (3) officer Kannon admitted his conduct, expressed regret and pledged that his inappropriate actions would never happen again

and (4) officer Kannon's 22 years of excellent service with no prior disciplinary history. Ferro Decl. Exh. D.

11. In August, 2005 Officer Kannon was directed by Captain Niles not to talk to plaintiff. Lee Decl. Exh. B at 92. Officer Kannon, has had only one short conversation with officer Wood since the August, 2005 incident involving a work related question. Id; Lee Decl. Exh. A at 235.

12. Officer Kannon stated that he was going golfing with the Commissioner because he was participating in a golf tournament in which, he believed the Commissioner was also playing. Lee Decl. Exh. B at 57.

13. Officer Kannon's thanked his fellow officers over the radio for their support. Cplt. ¶ 39. Lee Decl. Exh. B at 58-59.  This comment was not directed at plaintiff. Id.

14. Sgt Keller has on occasion cursed at individuals other than officer Wood. Lee Decl. Exh. A at 148-49.

15. Plaintiff has a history of calling in sick, which would be anathema to the chart sergeant whose responsibility is staffing the facility. Lee Decl. Exh. A at 204; Keller Decl. ¶ 3.

16. Sgt. Keller was not friends with officer Kannon. Lee Decl. Exh. A at 145. Officer Wood never discussed the incident involving herself and officer Kannon with Sgt. Keller and has no understanding of whether Sgt. Keller thought it was inappropriate for her to pursue charges against officer Kannon. Id. at 142-43.

17. The Union chief, officer Frawley did not "turn his back" on plaintiff. Lee Decl. Exh. A at 137.

18. On September 26, 2005, no officer near the line up room said anything to plaintiff. Lee Decl. Exh. A at 87. Plaintiff cannot identify a single officer who allegedly turned his back on her and gave her a look of disgust. Lee Decl. Exh. A at 141-42.

19. Plaintiff does not know either who referred to her as a "bitch" and "lawsuit queen" or to whom the comment was made. Plaintiff was not present when the comment was made and does not recall who told her about the comment. Plaintiff's explanation for learning that she was called "lawsuit queen" and "bitch" was "on a daily basis, I hear things." Lee Decl. Exh. A at 97-98.

20. Plaintiff's friend officer Schultz asked her how far she intended to pursue charges against officer Kannon. Officer Wood described her relationship with officer Schultz as "fine." Lee Decl. Exh. A at 191-93.

21. Plaintiff has not sought psychiatric medication or counseling except for the purpose of advancing her lawsuit. Lee Decl. Exh. A at 181-83, 270.

22. Plaintiff has not criticized the officials who investigated and disciplined officer Kannon. Lee Decl. Exh. A at 152, 191, 231-232.

23. Officer Kannon's prior work history does not document that he might be a threat to plaintiff. Lee Decl. Exh. C.

24. Before the August, 2005 incident, plaintiff had a good relationship with officer Kannon. Lee Decl. Exh. A at 218.

25. There was nothing the Department could have done to prevent officer Kannon's actions involving showing nude pictures that he claimed looked like officer Wood. Lee Decl. Exh. A at 177.

26. Plaintiff never reported alleged retaliation that followed officer Wood seeking disciplinary charges against officer Kannon.  Lee Decl. Exh. A at 137, 166-67.

27. There was nothing the Department could do to ease the hostility plaintiff claims she faces from other officers.  Lee Decl. Exh. A at 166.

28. The allegation that Sgt. Keller cursed at officer Wood and denied her leave were not related to her gender.  Lee Decl. Exh. A at 143-44.

29. Plaintiff was treated fairly by Captains Niles and Ferro and Lieutenant Urbanski and Sgt. Trevorah, one of her direct supervisors was sympathetic to her complaints.  Lee Decl. Exh. A at 152, 191, 232.  There are no supervisors at the facility who are hostile towards her.  The Superintendent , the Deputy Superintendent of Security and Captain Ferro exhibited no hostility.  Id. at 231.

30. Some officers have been supportive of plaintiff after she complained about officer Kannon's actions.  Id. at 164-65.

31. Plaintiff never reported alleged hostility from other officers after pursuing charges against officer Kannon. Lee Decl. Exh. A at 166-67.  Nor did plaintiff complain or report incidents involving alleged threats and inappropriate comments by officer Kannon, Sgt. Keller and other officers.  Lee Decl. Exh. A at 137.

32. There is nothing that management can do to ameliorate the hostility officer Wood claims that she feels from other officers.  Id. at 166, 177.

33. Plaintiff's only complaint about the way that DOCS handled the investigation of officer Kannon was that the process was too slow.  Id. at 174-75, 240.

34. While plaintiff could transfer to another medium security facility less than a half hour away from where she lives, she chooses not to because she lives closer to Mid-Orange Correctional Facility. Id. at 166-68.

35. Plaintiff chooses not to apply for an accommodation (a different job assignment within Mid-Orange), because she did not want to "cut in front of a senior officer." Id. at 167. Plaintiff's job posts have remained the same since August, 2005 until the present. Id. at 147-48.

36. Plaintiff never requested that officer Kannon be transferred to a different facility. Id. at 226-27.

37. Plaintiff is not aware of any remedial actions other than transferring officer Kannon that management should take. Id. at 227.

38. Plaintiff job performance has not suffered in spite of the alleged hostile work environment. Id. at 271.

39. Plaintiff received a job performance rating of good for 9/15/05 to 9/15/06. Lee Decl. Exh. D.

40. It was objectively reasonable for Sgt. Keller to believe that they he was not violating any clearly established right by purportedly declining to allow officer Wood to take sick leave and leave for union business where there was no one available to replace her. Keller Decl ¶¶ 7-9.

41. Sgt. Keller's staffing decisions were not influenced by the fact that officer Wood brought charges against officer Kannon. Sgt. Keller had no opinion on the question of whether it was appropriate for officer Wood to bring charges against officer Kannon and did not retaliate against her for bringing charges. Keller Decl.¶ 9.

Dated:  New York, New York
         July 23, 2007

                              ANDREW M. CUOMO
                              Attorney General of the
                              State of New York
                              <u>Attorney for State Defendants</u>
                              By:

                              _____
                              BENJAMIN LEE (BL-7440)
                              Assistant Attorney General
                              120 Broadway, 24th Floor
                              New York, New York 10271
                              (212) 416-8922